IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JASAUN ROBERT LAWRENCE  \*
MATTICE,
                              \*

   Petitioner,

                              \*     Civil Action No. GLR-19-1524

v.
                              \*

J.R. BELL, Warden,[1]
                              \*

   Respondent.
                              \*\*\*

**<u>MEMORANDUM OPINION</u>**

THIS MATTER is before the Court on Respondent Warden J.R. Bell's Motion to Dismiss the Complaint[2] or Alternatively for Summary Judgment.[3] (ECF No. 3). The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2018). For the reasons outlined below, the Court will grant the Motion, which it construes, in part, as one for summary judgment.

---

[1] J.R. Bell is presently Warden at FCI Cumberland. Pursuant to Fed.R.Civ.P. 25(d), J.R. Bell, Warden, is automatically substituted as Respondent, and the Clerk shall revise the docket consistent with the above case caption.

[2] The title of the Motion purports to seek the dismissal of a "complaint," whereas the supporting memorandum of law refers to a "petition." (Compare ECF No. 3, with ECF No. 3-1). An inmate may properly challenge the Bureau of Prison's ("BOP") determination concerning an inmate's request for presentence credit through a Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2241. Major v. Apker, 576 F.App'x 284, 288 (4th Cir. 2014). Because Mattice has filed this action pursuant to § 2241, the document initiating this litigation is properly referred to as a "petition."

[3] Also pending are Mattice's Motion to Strike (ECF No. 5), Motion for Extension of Time (ECF No. 6), and "Notice of Completion of Discovery and Motion for Judgment on the Pleadings" (ECF No. 8), which the Court construes as an Opposition to the Motion to Dismiss. Because the Court will grant Bell's Motion, the Court will deny these motions as moot.

## I. BACKGROUND

Petitioner Jasaun Robert Lawrence Mattice is incarcerated at Federal Correctional Institution in Cumberland, Maryland ("FCI Cumberland"), serving a seventy-nine-month sentence for forgery, bank fraud, and related offenses. See United States v. Mattice, No. 1:16-cr-00320-DCN (N.D. Ohio filed Oct. 13, 2016). His sentence also includes $4,400.00 in court assessments, which is "due immediately," and $40,839.62 in restitution. (Erickson Decl. Attach. 10 ["Judgment in Criminal Case"] at 55–56, ECF No. 3-2).[4]

The road leading to Mattice's current incarceration and legal woes is a long one, marred with several arrests, re-arrests, and overlapping periods of incarceration. The first arrest occurred on October 29, 2015 in the State of Ohio. (Erickson Decl. ¶ 3, ECF No. 3-2). Mattice was charged with forgery and related offenses in the Court of Common Pleas in case number B 1506068-B ("First State Forgery Case"). (Id.). Mattice was also charged with two misdemeanors in Municipal Court in case number C/15/CRA/28951 ("Misdemeanor Case"). (Id.). He was detained pending resolution of those cases. (Id.). On March 14, 2016, Mattice pled guilty to theft and attempted forgery and was sentenced to 137 days of incarceration. (Erickson Decl. Attach. 1 ["Common Pleas Court Records"] at 9, ECF No. 3-2). Mattice received credit for time served from October 29, 2015 through March 14, 2016. (Erickson Decl. ¶ 3). Nonetheless, he remained in State custody because detainers had been lodged in case numbers CR-14-586267-A ("Theft Case") and CR-16-606246-B ("First Drug Case"). (Id.).

---

[4] Citations refer to the pagination assigned by the Court's Case Management and Electronic Case Files ("CM/ECF") system.

On March 30, 2016, Mattice posted bail in the Theft Case and First Drug Case. (Id. ¶ 4). He was then transferred within State custody on pending charges in case numbers CRB 1400567 ("Obstructing Case") and CRB 1400533 ("Marijuana Case"). (Id.; Erickson Decl. Attach. 2 ["Garfield Heights Court Records"] at 14–16, ECF No. 3-2). On March 31, 2016, Mattice was convicted of obstruction of official business and possession of marijuana in the above cases. (Garfield Heights Court Records at 15). He was sentenced to ten days of incarceration and received credit for the time he spent in custody on March 30, 2016. (Id.). Mattice was released from custody on April 8, 2016. (Id. at 14).

On or about May 12, 2016, Mattice was arrested on a warrant in the Theft Case, First Drug Case, and CR-16-605241-A ("Second State Forgery Case"). (Erickson Decl. ¶ 5). On May 17, 2016, he was released on bond. (Id.). On June 10, 2016, he was re-arrested in the First Drug Case and posted bond the same day. (Id. ¶ 6). On September 9, 2016, Mattice was arrested again in the Theft Case, First Drug Case, and Second State Forgery Case and released on bond that same day. (Id. ¶ 7).

On October 13, 2016, a Grand Jury returned a twenty-eight-count indictment in the United States District Court for the Northern District of Ohio in case number 1:16-CR-00320 ("Federal Forgery Case"). (Erickson Decl. Attach. 4 ["Indictment"] at 21–26, ECF No. 3-2). A federal arrest warrant issued the same day. (Erickson Decl. ¶ 8). On October 26, 2016, Mattice was arrested by federal authorities. (Id. ¶ 9).

On October 28, 2016, Mattice was released to State authorities pursuant to a writ of habeas corpus. (Id. ¶ 10). On November 2, 2016, the charges in the Second State Forgery Case were dismissed in lieu of federal prosecution, but Mattice remained in State custody

3

on bank fraud and counterfeit security charges in the Theft Case and First Drug Case. (Id. ¶ 11). On November 21, 2016, the State dismissed the charges in the First Drug Case without prejudice but indicted Mattice in case number CR-16-609173-C ("Second Drug Case"). (Id. ¶ 12). On November 22, 2016, Mattice was sentenced to time served in the Theft Case and Second Drug Case. (Id. at ¶ 13). All time spent in primary state custody from May 12, 2016 through November 22, 2016 was credited toward the time-served state sentences. (Id.). Mattice was subsequently returned to the custody of federal authorities on November 28, 2016. (Erickson Decl. Attach. 6 ["Custody/Detention Report"] at 30–31, ECF No. 3-2).

On April 30, 2018, Mattice pled guilty to bank fraud and related offense in the Federal Forgery Case, and he was sentenced to seventy-nine months' incarceration followed by three years of supervised release. (Judgment in Criminal Case at 50). The prison sentence started on April 30, 2018. (Erickson Decl. Attach. 11 ["Inmate Data"] at 61–62, ECF No. 3-2). Additionally, the Court imposed $4,400.00 in assessments, which were "due immediately," and ordered $40,839.62 in restitution. (Judgment in Criminal Case at 55–56). The judgment states that all criminal monetary penalties are due during imprisonment. (Id. at 57). Mattice filed a 28 U.S.C. § 2255 motion to vacate, which was denied on July 30, 2019. See United States v. Mattice, No. 1:16-cr-00320-DCN, 2019 WL 3431138 (N.D. Ohio July 30, 2019).

The Bureau of Prisons ("BOP") applied prior custody credit to Mattice's federal sentence for time he served from: (1) March 14, 2016 through March 29, 2016 (state jail

4

time) and (2) October 26, 2016 (the date the federal arrest warrant was executed) through April 29, 2018 (the day before imposition of his federal sentence). (Erickson Decl. ¶ 17).

On May 21, 2019, Mattice filed this Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, asserting three grounds for relief: first, the BOP miscalculated his prior custody credits; second, the two-year mandatory minimum sentence and other sentencing enhancements were based on evidence that was not found beyond a reasonable doubt; and third, the BOP improperly uses the Inmate Financial Responsibility Program ("IFRP") to collect court-ordered monetary penalties. (ECF No. 1) Bell filed a Motion to Dismiss on July 30, 2019. (ECF No. 3). On August 30, 2019, Mattice filed a Motion to Strike, which the Court construes as an Opposition. (ECF No. 5).

## II. DISCUSSION

### A. Jurisdiction under Rule 12(b)(1)

#### 1. Failure to Exhaust Administrative Remedies

The IFRP is a voluntary program that encourages "each sentenced inmate to meet his or her legitimate financial obligations." 28 C.F.R. § 545.10. The program allows for the development of a financial plan so that inmates may satisfy court-ordered payments while incarcerated. See id. § 545.11(a). Although the program is voluntary, an inmate who refuses to comply with an established financial plan may lose certain privileges, including inmate pay, work and housing assignments, and eligibility for community-based programs. See id. § 545.11(d). In determining an inmate's monthly IFRP payment, an inmate is allotted $75.00 per month for telephone expenses. Id. § 5 45.11(b). Any balance in the inmate's account above that $75.00 amount may be considered for IFRP payments. Id.; (see also

5

Washington Decl. Attach. 3 ["IFRP Program Statement"] at 24–25, ECF No. 3-3). If the funds in the inmate's account do not exceed the $75.00 telephone allotment, then the inmate pays the minimum level of $25.00 per quarter. Id. § 545.11(b)(1); (Washington Decl. ¶ 8).

Mattice asserts BOP improperly uses IFRP to collect court-ordered monetary penalties. Specifically, Mattice argues that the sentencing court impermissibly delegated its authority to BOP by ordering restitution without specifying a payment schedule. Further, he argues that the restitution order is invalid because it does not comply with the Mandatory Victims Restitution Act of 1996, 18 U.S.C. § 3663A, since it was issued without regard to his financial circumstances.[5] Lastly, Mattice alleges that he was "arbitrarily forced in to signing an agreement under the guise of threat of penalty by refusing." (Pet. Writ Habeas Corpus ["Habeas Pet."] at 17–18, ECF No. 1). In opposition, Bell asserts that Mattice has not exhausted available administrative remedies regarding this claim. The Court agrees with Bell.

"Motions to dismiss for failure to exhaust administrative remedies are governed by Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction." Khoury v. Meserve, 268 F.Supp.2d 600, 606 (D.Md.2003). Accordingly, the Defendant's motion will be treated as a motion to dismiss for lack of subject matter jurisdiction for the purpose of this argument. See Fed.R.Civ.P. 12(b)(1); Jones v. Calvert Group, Ltd., 551 F.3d 297, 300 (4th Cir.2009)

---

[5] To the extent Mattice is challenging his judgment of restitution, this claim is properly presented in a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 and may not be addressed here.

(explaining that "a failure by the plaintiff to exhaust administrative remedies concerning a Title VII claim deprives the federal courts of subject matter jurisdiction over the claim").

An inmate is required to exhaust administrative remedies before filing suit in federal court. 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); see also Woodford v. Ngo, 548 U.S. 81, 88–89 (2006). The BOP has a four-tiered administrative remedy process, 28 C.F.R. § 542.10, et seq., which must be fully completed for proper exhaustion.

However, an inmate need only exhaust "available" remedies. 42 U.S.C. § 1997e(a). "[A]n administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Ross v. Blake, 136 S.Ct. 1850, 1853 (2016). It may also be unavailable when "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." Id. The third circumstance arises when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1860.

Here, Mattice agreed to and signed an Inmate Financial Plan on July 14, 2018. (Washington Decl. Attach. 2 ["Inmate Financial Plan"] at 15, ECF No. 3-3). Beginning in September 2018, $25.00 would be withdrawn from Mattice's inmate trust fund account

each month to pay the $4,400 court-ordered assessment and the $40,829.62 restitution. (Id.). A routine review of his IFRP participation found that although Mattice had sufficient funds, he was not submitting the agreed payments. (Washington Decl. ¶¶ 7–9). Consequently, Mattice was placed on IFRP "refuse status" on July 12, 2019 for failing to remit his June 2019 payment. (Id. ¶ 9). As of July 25, 2019, Mattice had made no IFRP payments and owed $4,400.00 on his assessment and $40,829.62 for restitution. (Id. ¶ 10).

On August 16, 2018, Mattice filed grievance 950475-F1 to FCI Cumberland to appeal the "unjust" financial responsibility program. (Williams Decl. ¶ 4, ECF No. 3-4). The appeal was closed with an explanation to Mattice. (Id.). Thereafter, Mattice did not pursue the administrative remedy process any further. (Id. ¶ 5). Mattice does not deny his failure to exhaust administrative remedies; instead he maintains that he is not required to exhaust his administrative remedies because "it would be futile due to existing BOP policy." (Mot. Strike ["Opp'n"] at 1, 6, ECF No. 5).

Mattice's dissatisfaction with BOP policy does not demonstrate the administrative process amounts to a "dead end" as contemplated under Ross. Accordingly, Mattice's failure to exhaust administrative remedies requires dismissal of this claim.

### 2. Failure to Raise a Claim Reviewable Under 28 U.S.C §2241

Next, Mattice challenges his two-year mandatory sentence and the sentencing enhancements on the grounds they were based on evidence not found beyond a reasonable doubt under the "Apprendi-Alleyne holdings."[6] In doing so, he challenges the validity of

---

[6] See Apprendi v. New Jersey, 530 U.S. 466 (2000) (any fact, other than a prior conviction, that is used to enhance a sentence beyond the statutory maximum must be

8

the underlying criminal sentence rather than the execution of the sentence imposed. Bell argues that because Mattice was sentenced by the Northern District of Ohio, he would need to file a motion to vacate, set aside, or correct the sentence pursuant to 28 U.S.C. § 2255 in that court. The Court agrees with Bell.

A section 2255 motion to vacate, set aside, or correct challenges the validity of a conviction or sentence. See Rice v. Rivera, 617 F.3d 802, 807–808 (4th Cir. 2010); In re Jones, 226 F.3d 328, 332 (4th Cir. 2000). By contrast, a § 2241 habeas petition challenges the execution of a federal prisoner's sentence rather than the sentence itself. See 28 U.S.C §2241(a); see also United States v. Little, 392 F.3d 671, 679 (4th Cir. 2004) (noting a request for sentencing credit is properly raised in a § 2241 petition); In re Vial, 115 F.3d 1192, 1194 n.5 (4th Cir. 1997) ("[A]ttacks on the execution of a sentence are properly raised in a § 2241 petition."). Although a federal prisoner generally may not seek collateral relief from a conviction or sentence by way of § 2241, there is an exception under a provision, often called the "Savings Clause," codified at 28 U.S.C. § 2255(e). It provides that a prisoner may seek relief under § 2241 if the remedy under § 2255 is "inadequate or ineffective to test the validity of his detention." 28 U.S.C. § 2255(e). Of import, however, an inability to obtain relief under § 2255 does not render it inadequate and ineffective for purposes of the Savings Clause. In re Jones, 226 F.3d at 333.

---

admitted by a defendant or found beyond reasonable doubt by a jury); Alleyne v. United States, 570 U.S. 99 (2013) (extending Apprendi to mandatory minimum sentencing). The Court once again notes that Mattice entered a guilty plea in case number 1:16-cr-00320-DCN. (See Judgment in Criminal Case at 50).

9

In United States v. Wheeler, 886 F.3d 415, 429 (4th Cir. 2018), the United States Court of Appeals for the Fourth Circuit set forth the following test to determine whether § 2255 is inadequate and ineffective so that the Savings Clause permits the use of a § 2241 petition to challenge a federal sentence:

> (1) at the time of sentencing, settled law of this circuit or the Supreme Court established the legality of the sentence; (2) subsequent to the prisoner's direct appeal and first § 2255 motion, the aforementioned settled substantive law changed and was deemed to apply retroactively on collateral review; (3) the prisoner is unable to meet the gatekeeping provisions of § 2255(h)(2) for second or successive motions; and (4) due to this retroactive change, the sentence now presents an error sufficiently grave to be deemed a fundamental defect.

Id.

Mattice does not allege facts to satisfy this standard. His claim may not be addressed in the context of a § 2241 petition but must be raised in a § 2255 Motion to Vacate.[7] Mattice's sentence was imposed by the United States District Court in Ohio—the court with jurisdiction to consider the Motion to Vacate.[8] Absent any basis to apply the Savings Clause here, this claim will be dismissed without prejudice for lack of jurisdiction.

---

[7] Bell notes that Mattice did so, and that the Northern District of Ohio denied his motion on July 30, 2019.

[8] 28 U.S.C § 2255(e) states:

An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.

## B. Summary Judgment under Rule 56

### 1. Conversion

Bell styles his Motion as a motion to dismiss under Rule 12(b)(6) or, in the alternative, for summary judgment under Rule 56. A motion styled in this manner implicates the Court's discretion under Rule 12(d). See Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty., 788 F.Supp.2d 431, 436–37 (D.Md. 2011), aff'd, 684 F.3d 462 (4th Cir. 2012). This Rule provides that when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56." Fed.R.Civ.P. 12(d). The Court "has 'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.'" Wells-Bey v. Kopp, No. ELH-12-2319, 2013 WL 1700927, at *5 (D.Md. Apr. 16, 2013) (quoting 5C Wright & Miller, Federal Practice & Procedure § 1366, at 159 (3d ed. 2004, 2012 Supp.)).

The Fourth Circuit has articulated two requirements for proper conversion of a Rule 12(b)(6) motion to a Rule 56 motion: notice and a reasonable opportunity for discovery. See Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor of Balt., 721 F.3d 264, 281 (4th Cir. 2013). When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur. See Moret v. Harvey, 381 F.Supp.2d 458, 464 (D.Md. 2005). The Court "does not have an obligation to notify parties of the obvious." Laughlin v. Metro. Wash. Airports

Auth., 149 F.3d 253, 261 (4th Cir. 1998).

Ordinarily, summary judgment is inappropriate when "the parties have not had an opportunity for reasonable discovery." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011). Yet, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 244 (4th Cir. 2002) (quoting Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996)). To raise sufficiently the issue that more discovery is needed, the non-movant must typically file an affidavit or declaration under Rule 56(d), explaining the "specified reasons" why "it cannot present facts essential to justify its opposition." Fed.R.Civ.P. 56(d). A Rule 56(d) affidavit is inadequate if it simply demands "discovery for the sake of discovery." Hamilton v. Mayor of Balt., 807 F.Supp.2d 331, 342 (D.Md. 2011) (citation omitted). A Rule 56(d) request for discovery is properly denied when "the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." Ingle ex rel. Estate of Ingle v. Yelton, 439 F.3d 191, 195 (4th Cir. 2006) (quoting Strag v. Bd. of Trs., Craven Cmty. Coll., 55 F.3d 943, 953 (4th Cir. 1995)).

The Fourth Circuit has warned that it "'place[s] great weight on the Rule 56[d] affidavit' and that 'a reference to Rule 56[d] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for a Rule 56[d] affidavit.'" Harrods, 302 F.3d at 244 (quoting Evans, 80 F.3d at

12

961). Failing to file a Rule 56(d) affidavit "is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate." Id. (quoting Evans, 80 F.3d at 961). Nevertheless, the Fourth Circuit has indicated that there are some limited instances in which summary judgment may be premature notwithstanding the non-movant's failure to file a Rule 56(d) affidavit. See id. A court may excuse the failure to file a Rule 56(d) affidavit when "fact-intensive issues, such as intent, are involved" and the nonmovant's objections to deciding summary judgment without discovery "serve[] as the functional equivalent of an affidavit." Id. at 245 (quoting First Chicago Int'l v. United Exch. Co., 836 F.2d 1375, 1380–81 (D.C.Cir. 1988)).

Here, Mattice was on notice that the Court might resolve Bell's Motion under Rule 56, because Bell styled his Motion in the alternative for summary judgment and presented extensive extra-pleading material for the Court's consideration. See Moret, 381 F.Supp.2d at 464. Mattice did not file a Rule 56(d) affidavit but sought an extension of time to complete discovery. (See ECF No. 6). Mattice subsequently informed the Court that discovery was complete. (See ECF No. 8). Accordingly, the Court concludes that both parties have had adequate time to conduct discovery and that review of the Motion under Rule 56 is appropriate.

### 2. Standard of Review

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. Ricci v. DeStefano, 557 U.S. 557, 586 (2009); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)).

Summary judgment is proper when the movant demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a), (c)(1)(A). Significantly, a party must be able to present the materials it cites in "a form that would be admissible in evidence," Fed.R.Civ.P. 56(c)(2), and supporting affidavits and declarations "must be made on personal knowledge" and "set out facts that would be admissible in evidence," Fed.R.Civ.P. 56(c)(4).

Once a motion for summary judgment is properly made and supported, the burden shifts to the nonmovant to identify evidence showing there is a genuine dispute of material fact. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). The nonmovant cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." Othentec Ltd. v. Phelan, 526 F.3d 135, 141 (4th Cir. 2008) (quoting Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985)).

A "material fact" is one that might affect the outcome of a party's case. Anderson, 477 U.S. at 248; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)). Whether a fact is "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; accord Hooven-Lewis, 249 F.3d at 265. A "genuine" dispute concerning a "material" fact arises when the

14

evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 248. If the nonmovant has failed to make a sufficient showing on an essential element of his case where he has the burden of proof, "there can be 'no genuine [dispute] as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986).

3. **Analysis**

The gravamen of Mattice's claim is that he is entitled to credit for time served from October 29, 2015 to November 28, 2016[9] because "[b]oth state and federal law require credit for 'time in custody' related to the offense at conviction."[10] (Habeas Pet. at 12).[11] In support thereof, he argues the following: First, the bank fraud charges in the Theft Case

---

[9] Mattice also appears to argue that he is entitled to credit for time served from October 29, 2015 to April 30, 2018. (See Habeas Pet. at 12). In responding to Mattice's claims, Bell also references this October 29, 2015 to April 30, 2018 time frame. (See Erickson Decl. ¶ 18). Irrespective of the end date that Mattice believes he is entitled to credit for time served, i.e., November 28, 2016 or April 30, 2018, Bell argues that his federal sentence cannot be credited with time served during the following periods: October 29, 2015 to March 13, 2016; March 30, 2016 to April 8, 2016; or May 12, 2016 to October 25, 2016.

[10] Mattice also asks for a nunc pro tunc designation to retroactively apply time he served in the custody of the State of Ohio to his federal sentence. The BOP may consider such a designation in cases where a federal sentence is imposed while a defendant is still in state custody. See 18 U.S.C. § 3621(b) (the BOP has the authority to designate the place of a prisoner's confinement); Barden v. Keohane, 921 F.2d 476, 480–83 (3d Cir. 1990) (concluding that a federal sentence may commence for a defendant who is already in state custody if the BOP or Attorney General designate a state facility for service of the federal sentence). However, Mattice is ineligible for a nunc pro tunc designation, because he served all of his state sentences by the time his federal sentence was imposed.

[11] Citations refer to the pagination assigned by the Court's Case Management and Electronic Case Files ("CM/ECF") system.

15

are unrelated to his Federal Forgery Case. Second, the Second State Forgery Case charged him with the same conduct alleged in his Federal Forgery Case. Third, that the State of Ohio dismissed the Second State Forgery Case on November 2, 2016 before he was sentenced in the Theft Case.

Conversely, Bell argues that Mattice is not entitled to credit for jail time that occurred from October 29, 2015 to March 13, 2016; March 30, 2016 to April 8, 2016; or May 12, 2016 to October 25, 2016, because that time was already credited to his various state sentences. The Court agrees with Bell's computation of time and further concludes that Mattice has failed to establish a genuine dispute as to a material fact. Neither the procedural posture of the above-referenced cases nor Mattice's periods of incarceration are disputed by either party. Mattice presents a purely legal argument premised on his faulty application of Kory v. Gray, 478 S.W.3d 574 (Mo.Ct.App. 2016), and Moreno-Cebrero v. Gonzales, 485 F.3d 395 (7th Cir. 2007))[12]. A legal disagreement is not a factual dispute, capable of surviving a motion for summary judgment. See O'Connor v. Balt. Cty., 854 A.2d 1191, 1197 (Md. 2004) (affirming the lower court's determination that no material factual dispute existed where plaintiff's argument was purely legal, and defendant did not contest the asserted facts). Nonetheless, the Court reaches the merits of Mattice's legal argument and rejects it for the reasons outlined below.

---

[12] Moreno-Cebrero is an Immigration and Nationality Act ("INA") case examining whether "detention prior to conviction should count toward the term of imprisonment used to bar an alien from receiving relief under § 212(c)." 485 F.3d 395, 397 (7th Cir. 2007)). It is both factually and legally distinct from the case at bar, rendering it wholly inapplicable.

16

Mattice relies upon Kory v. Gray, 478 S.W.3d 574 (Mo.Ct.App. 2016), to support his contention that BOP incorrectly calculated his credit for time served. As a preliminary matter, a decision issued by the Missouri Court of Appeals is not binding authority on this Court. Second, the facts of that case are distinguishable from Mattice's case. There, Kory was incarcerated on July 2, 2014 on rape charges. 478 S.W.3d at 575. The State dismissed the information on August 11, 2015 but filed a new criminal complaint the same day, amending the charges. Id. The State dismissed the complaint again on December 16, 2015 but filed an amended information charging him with a misdemeanor related to the original rape charge. Id. Kory pled guilty to a misdemeanor sexual abuse on December 16, 2015 and was sentenced to one year of incarceration in the county jail. Id. Kory filed a habeas petition after the circuit court denied his request for credit for time served. Id. at 576.

In granting Kory's habeas petition, the Missouri Court of Appeals noted that Kory had been "continuously" and "exclusively" incarcerated since 2014 in connection with the rape incident. Id. Here, however, Mattice was incarcerated on, and pled guilty to, various state offenses before he was ever in the exclusive and continuous custody of federal authorities and before he pled guilty in the Federal Forgery Case. Accordingly, even if Kory was binding authority, the facts of that case do not compel the same result in this case.

To determine when Mattice's federal imprisonment began and what, if any credit he may be entitled to, the Court first turns to 18 U.S.C. § 3585(a), which provides that a federal term of imprisonment begins "on the date the defendant is received in custody awaiting transportation to . . . the official detention facility at which the sentence is to be

17

served." A federal inmate may be entitled to certain jail time credit under 18 U.S.C. § 3585(b), which provides:

> A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences (1) as a result of the offense for which the sentence was imposed; or (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed.

However, a defendant may not receive that credit if it has been "credited against another sentence." Id. The purpose of this provision is to prevent an inmate from receiving "double credit" for time spent in detention toward more than one sentence. United States v. Wilson, 503 U.S. 329, 337 (1992).

Moreover, where an inmate has sentences imposed by federal and state authorities, the sovereign that arrested him first acquires and maintains primary jurisdiction over him until the sentence imposed by that sovereign has been satisfied. See United States v. Evans, 159 F.3d 908, 912 (4th Cir.1998) (explaining the principle of primary jurisdiction as set forth in Ponzi v. Fessenden, 258 U.S. 254, 260 (1922)). Where a state maintains primary jurisdiction over a defendant, federal custody under a federal criminal sentence "commences only when the state authorities relinquish the prisoner on satisfaction of the state obligation." Evans, 159 F.3d at 912. When a state exercises primary jurisdiction over a defendant, issuance of a detainer or a writ of habeas corpus by federal authorities does not change the defendant's primary jurisdiction status. See Thomas v. Whalen, 962 F.2d 358, 358–60 (4th Cir.1992).

Here, Mattice was in state custody from October 29, 2015 to March 13, 2016; March 30, 2016 to April 8, 2016; and from May 12, 2016 to November 22, 2016. During that time, the State of Ohio maintained primary jurisdiction over Mattice. As detailed above, Mattice received time-served sentences in various state cases before he was transferred to federal authorities on November 28, 2016 and before he was sentenced in the Federal Forgery Case on April 30, 2018. Thus, under 18 U.S.C. § 3585(b), Mattice is not entitled to presentence credit toward his federal sentence for October 29, 2015 to March 13, 2016; March 30, 2016 to April 8, 2016; and from May 12, 2016 to November 22, 2016; otherwise, he would be given impermissible double credit. Regarding his current federal sentence, Mattice was entitled to, and did receive, credit for time served from March 14, 2016 through March 29, 2016 and from October 26, 2016 through April 29, 2018. Based on the record, Mattice is not entitled to anything more.

At bottom, there is no genuine dispute of material fact regarding the computation of his time served credits. Moreover, the Court is not persuaded by Mattice's legal argument. Accordingly, Bell is entitled to summary judgment on this claim.

### III. CONCLUSION

Mattice's IFRP claim (Ground III) is dismissed for failure to exhaust administrative remedies. Mattice's claim challenging his mandatory minimum sentence and the sentence enhancements (Ground II) is dismissed for lack of jurisdiction. The Court finds no genuine issue of material fact in dispute as to Mattice's time-served claim (Ground I) and therefore concludes that Bell is entitled to summary judgment on that claim. A separate Order follows.

Entered this 30th of March, 2020.

/s/
George L. Russell, III
United States District Judge